IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RITA JO NITZ,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | Civil No. **97-384-WDS** |
| | ) | |
| **MARY SIGLER,** | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner Rita Jo Nitz (now Brookmyer) is currently incarcerated at Dwight Correctional Center, having been sentenced to imprisonment for "natural life" for the 1988 murder of Michael D. Miley. (*See* **Doc. 20[1], Exhibit D, *People v. Nitz*, 610 N.E.2d 1289 (Ill.App. 5th Dist. 1993)).** Petitioner, proceeding pro se, is before the Court, seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. **(Doc. 45).**

This Report and Recommendation is respectfully submitted to United States District Judge William D. Stiehl pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

## Relevant Factual Background and Procedural History

Following a jury trial, petitioner Rita Jo Nitz was convicted in September 1989 of first degree murder for the "shooting death" of Michael D. Miley. **(*See* Doc. 20, Exhibit D, *People v. Rita Jo Nitz*, 610 N.E.2d 1289, 1292-1293 (Ill.App. 5th Dist. 1993)).** Petitioner's then husband, Richard Nitz, had been convicted of Miley's murder in a separate trial held before petitioner's

---

[1]The state court record relative to petitioner's direct appeal and first post conviction petition is located at Doc. 20, Exhibits A-O (in paper format). The state court record relative to petitioner's second post-conviction appeal is located at Doc. 49, Exhibits P-W (Docs. 49-3 – 49-9 in the CM-ECF system).

trial[2].  ***See People v. Richard Nitz***, 572 N.E.2d 895, 899-900 (Ill. 1991).  Richard Nitz's trial had

been held in Williamson County, Illinois, but Rita Nitz's trial was moved to Massac County,

Illinois.

Although petitioner has taken the position that she was not involved in the murder, and

that the evidence was insufficient to convict her as charged, she does not specifically dispute the

factual findings.  Therefore, this Court draws a basic factual scenario from the appellate

decision, *People v. Rita Jo Nitz*, 610 N.E.2d 1289 (Ill.App. 5th Dist. 1993) **(Doc. 20, Exhibit D)**.

***See*** **28 U.S.C. § 2254(e)(1);** ***see also Daniels v. Knight,*** **476 F.3d 426, 434 (7th Cir. 2007).**

Richard and Rita Nitz were married at Crab Orchard Lake, and they lived only two miles

away.  The Nitzes were members of the "Trog Club"– the name purportedly derived from

"troglodyte, " which is defined as "a member of a fabulous or prehistoric race of people that

lived in caves, dens, or holes", and/or "a person considered to be reclusive, reactionary, out of

date, or brutish." ***(Doc. 20, Exhibit D, Nitz***, **610 N.E.2d at 1293;** ***see also***

**www.dictionary.com).**  The Nitzes and other members of the Trog Club regularly gathered in

the parking lot near the Crab Orchard Lake spillway.  Homosexuals had also taken to gathering

---

[2]Richard Nitz's conviction was sentenced to death, but the Illinois Supreme Court
granted his post-conviction petition, ordering that he be re-tried because the State had failed to
disclose that, unbeknownst to Mr. Nitz or his attorney, it (by and through jailers) had
administered the psychotropic medication Tranxene to Mr. Nitz during trial, thereby denying
him due process.  *See People v. Richard C. Nitz*, 670 N.E. 2d 672 (Ill. 1996).  Mr. Nitz was
convicted upon retrial and given a life sentence, which, post *Apprendi v. New Jersey*, 530 U.S.
466 (2000), was reconsidered at the discretionary direction of the Illinois Supreme Court to
determine whether there had been plain error when a jury did not consider whether the offense
was exceptionally brutal or heinous and deserving of an extended-term sentence.  *See People v.
Richard C. Nitz*, 799 N.E. 2d 675 (Ill. 2003).  After reconsideration and another round of
appeals, Mr. Nitz's procedural default of any *Apprendi* violation was not excused and the
extended-term life sentence was upheld by the Illinois Supreme Court.  *See People v. Richard C.
Nitz*, 848 N.E. 2d 982 (Ill. 2006).

there. The Nitzes could be called "territorial," and they and the Trogs routinely harassed the homosexuals. Richard Nitz openly declared his hatred of homosexuals; Rita was perceived as silently adopting Richard's views.

On the evening of April 6, 1988, Michael Miley, a homosexual, was socializing with friends at Crab Orchard Lake. The Nitzes had left their child at home with a babysitter, Betty Boyer, and gone to the lake. Approximately 30 minutes later, Rita returned home, retrieved a shotgun and left again. Later in the evening, the Nitzes both returned home. The babysitter observed a vehicle pull into the driveway, back out, and park just down the street. The driver of that vehicle approached Richard in the driveway. According to the babysitter, Richard had retrieved a baseball bat from his vehicle and was yelling for the man "to get his fucking ass off of his property; that he wasn't nothing but a faggot, and if he didn't he was going to kill him." **(Doc. 20, Exhibit D, *Nitz*, 610 N.E.2d at 1294).** The babysitter described the unidentified man turning away, and Richard then hitting him in the head with the bat, while she and Rita Nitz looked on. Richard and Rita then put the victim in the trunk of the victim's car and left, with Rita driving the victim's car and Richard driving another car. Over the next two days, Richard and Rita Nitz used the victim's credit cards to purchase tennis shoes, jeans, underwear, a bikini and a set of speakers.

The victim was later found, decapitated, in the trunk of his car; the car had been burned-out. The Nitzes were prosecuted based on the babysitter's testimony and physical evidence linking them to the crime. Aside from the aforementioned credit card purchases, the credit cards were found in the Nitzes' home, and other items belonging to the victim were recovered from the Nitzes' home and vehicle.

The victim's head was never recovered, and the cause of death could not be specified. However, an autopsy revealed no injuries or wounds on the body (aside from the decapitation), carbon monoxide intoxication from being transported in the trunk of the car, and that the victim had died before he was decapitated. There was no evidence that the victim had been shot in the head.

The evidence regarding the use of a gun consists of the babysitter's testimony, the fact that Rita had purchased a pistol only weeks earlier, an empty gun box recovered from the Nitzes' home, the fact that the gun has never been found, and testimony from Rita's cellmate, Barbara Winkler, that Rita had repeatedly recounted how she and her husband had beaten a man with a baseball bat, shot him in the head and hung him from a tree.

At trial, the defense attacked the credibility of babysitter Boyer and the cellmate Winkler. Rita testified that Richard, threatening her with a knife, made her go with him to the mall where the purchases were made with the victim's credit cards, but she denied any participation in the victim's death. Rita's version of events had her at home with her son, while Richard had left looking for babysitter Boyer who had borrowed his car and not returned it. In the middle of the night Richard returned home, needing Rita to help him because his car was stuck. When they went to the car, Rita thought she saw blood on the ground, and blue jeans sticking out of a pile of leaves. According to Rita, Richard asked her if she had ever seen a dead body. It was not until three weeks later that Rita thought this might have something to do with the murder of Michael Miley. Rita stated that an acquaintance, Glen Murphy, had admitted to a murder, but did not state that the victim was Michael Miley.

After a jury found Rita Nitz guilty of the shooting death of the victim, Michael Miley, the

trial judge sentenced Nitz to "natural life," pursuant to 38 ILCS 1005-8-1(b) (1989), finding that

the murder was brutal or heinous behavior indicative of wanton cruelty. The conviction and

sentence were affirmed on direct appeal. **(Doc. 20, Exhibits A-D).** In September 1993, the

Illinois Supreme Court denied petitioner leave to appeal. **(Doc. 20, Exhibits E-F).**

On April 23, 1997, petitioner Nitz filed the original petition for writ of habeas corpus in

this action. **(Doc. 1).** Nitz filed her petition in the Central District of Illinois, and she

simultaneously filed a post-conviction petition in Williamson County, Illinois. **(Doc. 20,**

**Exhibit G).** The federal petition was immediately transferred to this Court and the state petition

was eventually re-filed in Massac County, Illinois. **(*See* Doc. 4; and Doc. 20, Exhibit I).** In

December 1997, the federal petition was dismissed without prejudice, with leave to reinstate the

federal habeas action after Nitz's post-conviction petition was completed within the state system.

**(Doc. 6).** The state petition was denied as untimely under Illinois procedural rules; the denial

was affirmed on appeal, and on November 29, 2000, the Illinois Supreme Court denied Nitz

leave to appeal. **(Doc. 20, Exhibits I, L and N).**

Petitioner Nitz returned to this Court in December 2000 and her federal petition was

reinstated. **(Doc. 9).** An amended federal petition was filed in May 2001. **(Doc. 23).** However,

in September 2002 petitioner filed a second state post-conviction petition. **(Doc. 49-3, Exhibit**

**P).** In March 2004, while a Report and Recommendation was pending, Nitz's federal petition

was again dismissed without prejudice, with leave to reinstate the federal habeas action after

Nitz's second post-conviction petition was completed within the state system. **(Doc. 32).** That

petition was dismissed as successive and untimely. **(Doc. 49-4, Exhibit Q).** The dismissal was

effectively affirmed and on September 27, 2006, the Illinois Supreme Court denied Nitz leave to

appeal.  **(Docs. 49-6, Exhibit S; and Doc. 49-8, Exhibit V).**

Petitioner Nitz returned to this Court in October 2006; she was simultaneously granted permission to reinstate her petition and to amend the petition.  **(Doc. 38).**  The amended petition that is currently controlling was filed January 27, 2007.  **(Doc. 45).**

<u>**Issues Presented**</u>

Petitioner Nitz presents a myriad of arguments, many of which overlap.  The respondent and this Court have attempted to address the arguments in the same general order as they are presented in the petition.  The principal differences stem from the fact that some points of contention are mentioned early in the petition, but actually addressed in greater depth at a later point.[3]

The amended petition before the Court **(Doc. 45)** presents the following grounds for relief  (arguments newly raised in the latest petition are set forth in italics):

1. The State failed to prove that petitioner was guilty beyond reasonable doubt of first degree murder for the "shooting death" of Michael D. Miley, as charged;

2. The trial court erred in denying petitioner's motion for change of venue;

3. The trial judge was prejudiced against petitioner, as demonstrated by:

   a. the judge inquiring of jurors during *voir dire* whether Richard Nitz's conviction would prejudice them; and

   b. the judge receiving defense counsel's arguments and objections in a

---

[3]This Court notes that although petitioner argues that her trial, appellate and post-conviction counsel were ineffective, and that she is actually innocent, she presents these arguments as specific constitutional errors/issues, as opposed to "cause and prejudice" for excusing procedural defaults.  In order to offer the broadest possible analysis, this Court has attempted to address the specific issues, within the usual backward-cascading analytical framework of cause and prejudice.  However, the unusual procedural posture of this action further complicates the presentation and analysis.

hostile manner and making comments, such as "the proof is evident;"

4.    Petitioner was erroneously sentenced in that:

   a.    the "natural life" sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which should be retroactively applied;

   b.    the Illinois sentencing statute, 38 ILCS 1005-8-1(a)(1)(b), is unconstitutionally vague on its face;

   c.    the sentence itself is excessive and an abuse of discretion; and

   d.    the sentence violates the Illinois constitution because petitioner's limited participation, potential for rehabilitation and lack of a criminal history were not considered;

5.    Petitioner was denied effective assistance of counsel at trial because her attorney:

   a.    failed to object to statements by the trial judge and the prosecutor that Richard Nitz had been convicted of the same crime;

   b.    failed to object to evidence that Richard Nitz hated homosexuals;

   c.    failed to object to the introduction of a bat, knife and shovel when those items were not linked to any crime;

   d.    failed to impeach a witness called by the prosecution with her prior inconsistent statements;

   e.    failed to argue during closing argument that the victim was dead before the defendant was involved in any way with the victim;

   f.    *failed to advise the trial court that petitioner Rita Nitz was on medication and might be unfit to stand trial;*

   g.    *failed to request a mistrial after the trial judge "socialized" with a juror;*

   h.    *failed to address the State's theory of accountability in closing argument; and*

   i.    *failed to investigate other possible suspects;*

6.    *Trial counsel was generally unfit to represent petitioner Rita Nitz;*

7.      Appellate counsel was ineffective by:

      a.      *failing to argue that petitioner Rita Nitz was on medication during trial and should have been given a fitness hearing;*

      b.      *failing to investigate the State's failure to disclose exculpatory evidence; and*

      c.      *failing to argue that the State suborned perjury from the State's witness Detective Robert Burns;*

8.      *Post-conviction counsel was ineffective by:*

      a.      *failing to communicate with petitioner, as required by State procedureal rules;*

      b.      *lying to this Court about the filing dates of the second post-conviction petition;*

      c.      *failing to read the record and raise additional trial issues;*

      d.      *failing to raise procedural issues on appeal from the dismissal of post-conviction petition;*

      e.      *waiving claims on appeal from the dismissal of the first post-conviction petition;*

      f.      *failing to file a timely second post-conviction petition;*

      g.      *failing to file a required certificate under Illinois Supreme Court Rule 651(c); and*

      h.      *failing to raise issues of sex discrimination and equal protection violations;*

9.      *The State failed to disclose that jailers had given petitioner psychotropic medication without her knowledge or consent, which created a doubt as to her fitness to stand trial;*

10.     *The State failed to disclose important evidence:  the location of the victim's head, the State's failure to investigate other suspects, and the administration of psychotropic drugs to petitioner;*

11.     *The State suborned perjury through the testimony of Detective Robert Burns;*

12. The State Court handling the first post-conviction petition erred when it:

    a. failed to docket the first petition within the 90-day time limit prescribed by 725 ILCS 5/122-2.1(a) and (2)(b);

    b. dismissed the first petition as untimely, without an evidentiary hearing; and

    c. did not grant an evidentiary hearing as required by 725 ILCS 5/122-1 and 122-2.1(b);

13. *The Illinois Courts handling petitioner Rita Nitz's first and second post-conviction petitions have sexually discriminated against her, in that Richard Nitz has been granted relief; and*

14. *Petitioner was denied due process because, under the theory of accountability, she was convicted of uncharged crimes.*

**(Doc. 45).**

Respondent first argues that the newly added arguments (5(f-i); 6-11; and 13-14) are time barred by the one-year statute of limitations prescribed by 28 U.S.C. § 2244(d) and do not relate back to earlier petitions. Next, respondent would have the Court strip all alleged errors of State law from the petition (4(c-d); 8(a-h); and 12(a-c)), as they not cognizable under Section 2254. Respondent would also remove procedurally defaulted claims (4(a); 5(f-i); 6-11; 12(a); and 13-14) from consideration. Lastly, respondent addresses the merits of the remaining issues (1-3; 4(b); and 5(a-e)). Resting on the standard for relief prescribed by Section 2254(d), respondent argues that the State Courts' rulings were not contrary to, or involve an unreasonable application of, clearly established federal law, or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

**(Doc. 49).**

## The Statute of Limitations

The halting progress of this action is detailed above– the petition was filed, dismissed without prejudice, reinstated, amended, dismissed without prejudice, reinstated, and amended a second time. With respect to the current version of the petition, respondent argues that the issues that were not presented to this Court before are untimely, falling outside of the applicable statute of limitations. Those newly raised issued have already been denoted in italics in the listing of issues (Issues 5(f-i); 6-11; and 13-14). Respondent is correct, for the most part.

In accordance with 28 U.S.C. § 2254(c), the time for filing a Section 2254 petition for writ of habeas corpus– the "statute of limitations"– is prescribed in 28 U.S.C. § 2244(d):

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

**28 U.S.C. § 2244(d).**

The statute of limitations did not go into effect until April 24, 1996, long after petitioner's 1989 conviction and the conclusion of the direct appeal in October 1993. To accommodate convictions which became final prior to that date, the statutory clock began ticking on April 24, 1996–making the filing deadline April 23, 1997. *See Fernandez v. Sterner*, **227 F.3d 977, 978 (7th Cir. 2000); and** *Lindh v. Murphy*, **96 F.3d 856, 866 (7th Cir. 1996),** *rev'd on other grounds*, **521 U.S. 320 (1997).**

Petitioner initiated this federal action on April 23, 1997. Having filed her federal petition on the last day of the statutory filing period, petitioner literally has no time to spare. Although petitioner initiated her first post-conviction petition in the state system on that same date, an improperly filed or untimely petition in the state system does not toll the statute of limitations. *Duncan v. Walker*, **533 U.S. 167, 172 (2001);** *Powell v. Davis*, **415 F.3d 722, 726-727 (7th Cir. 2005).** Both of petitioner's state post-conviction petitions were dismissed as untimely, and this Court has no authority to second-guess those procedural rulings based on State law. *Powell v. Davis*, **415 F.3d 722, 726-727 (7th Cir. 2005);** *see also Pace v. DiGuglielmo*, **544 U.S. 408, 415-417 (2005).** Similarly, federal habeas corpus proceedings do not toll the one-year period. *Rhines v. Weber, 544 U.S. 269, 274-275 (2005); Tucker v. Kingston*, **538 F.3d 732, 733 (7th Cir. 2008).** Therefore, the statute of limitations ran out on April 24, 1997, the day *after* the original federal habeas petition was filed.

A habeas petition may be amended or supplemented as provided in the Rules of Civil Procedure, to the extent those rules are not inconsistent with any statutory provision or the habeas rules. **28 U.S.C. § 2242; Rule 11, Rules Governing Section 2254 Cases in the United States Courts.** Federal Rule of Civil Procedure 15(c)(2) provides that an amendment relates

back to the filing date of the original (timely) petition when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out- or attempted to be set out– in the original pleading." The United States Supreme Court explained in *Mayle v. Felix*, 545 U.S. 644 (2005), that in the habeas context the "original pleading" is the habeas petition as initially filed**. *Id*. at 655-656.**

At this juncture, it should be noted that respondent does not take issue with the fact that the original petition and the first amended petition were both dismissed without prejudice, with leave to reinstate, when petitioner moved to stay proceedings so she could exhaust her state post-conviction remedies. **(*See* Docs. 3, 6, 30 and 32).** This is apparently in recognition of the fact that it was not until 2005 that the Supreme Court approved staying a habeas petition and holding it in abeyance while state post-conviction remedies are exhausted, thereby preserving unexhausted claims that were lodged in the original petition before they were exhausted. ***Rhines v. Weber*, 544 U.S. 269 (2005).** Therefore, for equitable reasons, this Court will equate the dismissals without prejudice and with leave to reinstate as the equivalent of the stay and abeyance procedure prescribed in *Rhines v. Weber*, 544 U.S. 269 (2005).[4]

Because the statute of limitations has never been tolled since April 23, 1994, and consistent with the dictate in *Mayle v. Felix,* the initial timely petition should be used for the "relation back" determination, except where petitioner can show that the facts underlying the issue could not have been discovered through due diligence. Respondent does not contest that the issues raised in the original petition and the issues presented in the first amended petition are

---

[4]Unlike the situation presented in *Tucker v. Kingston*, 538 F.3d 732 (7th Cir. 2008), the original petition was not dismissed outright, so the reinstated petition could be amended.

the same.  (*Compare* **Doc. 1 and Doc. 23).**  Because of the similarity of issues, and the dual

reinstatements, this Court, like respondent, will compare the first amended petition **(Doc. 23)** and

the second/current amended petition **(Doc. 45)** for purpose of the "relation back" analysis.

The fact that all of the claims arise out of the same case, trial or post-conviction

proceeding does not mean that they "relate back."  In *Mayle v. Felix*, the Supreme Court held

that an amended habeas petition relates back only where the original claims and the amended

claims "are tied to a common core of operative facts."  ***Mayle*, 545 U.S. at 664.**  The high court

also stressed that the usual notice pleading standard for pleadings prescribed by Federal Rule of

Civil Procedure 8 does not control; rather, Rule 2(c) of the Rules Governing Section 2254 Cases

in the United States District Courts requires that habeas petitioners plead with particularity.  ***Id.***

**at 655-656 and 661.**

A claim of actual innocence does not permit the court to waive the one-year limitations

period and reach untimely claims. ***Escamilla v. Jungwirth,* 426 F.3d 868, 871-872 (7th Cir.**

**2005).** Thus, even if petitioner's claim of actual innocence is adequately supported, it cannot

excuse an untimely filing of the motion for leave to amend.

**Issues 5(f-i)**

Issue 5 groups nine alleged errors committed by trial counsel (subparts (a-i)), each of

which petitioner argues constitutes ineffective assistance of counsel.  Subparts (f-i) are new.

Subparts (a-e) pertain to separate and distinct errors by trial counsel.  Subparts (f), (g) and (i) are

also separate and distinct errors.  As *Mayle v. Felix* explains, the fact that the same attorney is

involved and that all of the alleged errors occurred at the same trial is insufficient.  Therefore,

Issues 5 (f), (g) and (i) are barred by the statute of limitations, because those issues have nothing

else in common. Petitioner presents no argument regarding why these new issues were not raised before, and they all appear to pertain to matters that petitioner could have discovered through due diligence.[5] Accordingly, Issues 5 (f), (g) and (i) should be dismissed with prejudice.

Respondent concedes that new Issue 5(h) and previously pled Issue 5(e) both pertain to counsel's closing argument. Issue 5(e) faults counsel for not arguing that the victim was dead before petitioner Rita Nitz was involved. Issue 5(h) faults counsel for not addressing the State's theory of accountability.[6] This Court concludes that the two arguments revolve around the same factual issues. Therefore, for purposes of the statute of limitations, new Issue 5(h) relates back to the timely filed petition.

**Issue 6**

Issue 6 is new and argues that trial counsel, Robert Drew, "was not trained, equipped, nor [sic] experienced in defending a capital murder trial." **(Doc. 45-4, p. 5).** Issue 6 is far broader than the previous issues regarding specific instances of allegedly ineffective assistance of counsel (Issues 5(a-e)). Therefore, the common core of facts needed to satisfy the "relation back" requirement does not exist and Issue 6 should be dismissed with prejudice, as it is barred by the statute of limitations. Again, petitioner presents no argument regarding why this issue

---

[5]Petitioner was represented by Robert Drew at trial, and by Daniel Kirwan, Dan Evers, Tom Peters and Charles Murphy on appeal, then by Paul Christenson during the first and second rounds of post-conviction proceedings (although petitioner proceeded pro se before the Illinois Supreme Court in requesting leave to appeal the denial of the second post-conviction petition). Petitioner, proceeding pro se, filed the original federal habeas petition; Paul Christenson filed the amended petition, and petitioner, pro se, filed the subject second amended petition.

[6]The "common-design rule" of accountability holds a person legally accountable for the conduct of another when: "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, agrees or attempts to aid, such other person in the planning or commission of the offense." **720 ILCS 5/5-2(c).**

was not raised before; trial counsel's general competence could have been discovered through due diligence.

**Issues 7 (a-c)**

Issues 7(a-c) pertain to alleged ineffective assistance of appellate counsel, Tom Peters and Charles "Chuck" Murphy, regarding trial issues not raised on appeal. <u>No</u> issues regarding appellate counsel have been raised before. And, the underlying issues– lack of a fitness hearing, lack of investigation of exculpatory evidence, and failure to argue that the State suborned perjury– were not pled before, at least not with the necessary particularity. Petitioner presents no argument regarding why these issues were not raised before; appellate counsel's effectiveness could have been discovered through due diligence. Moreover, the trial issues petitioner thinks should have been raised by appellate counsel arose during trial. The statutory time begins from when the factual predicate could have been discovered through due diligence, not when it was discovered, and not when the petitioner finally came to realize its significance. ***Owens v. Boyd*, 235 F.3d 356, 359-360 (7th Cir. 2000).** Therefore, the statute of limitations bars consideration of Issues 7(a-c), which should be dismissed with prejudice.

**Issues 8(a-h) and Equitable Tolling Relative to Issues 5-7**

Issues 8(a-h) allege that attorney Paul Christenson was ineffective during post-conviction proceedings and in proceedings before this Court. Respondent correctly notes that none of the underlying points of error were raised in the previous federal petition. Moreover, as respondent notes in a separate argument, the underlying errors are premised upon counsel's failure to properly pursue post-conviction remedies, which is not a constitutional right. ***Pennsylvania v. Finley*, 481 U.S. 551, 556-557 (1987).** "Federal habeas corpus relief does not lie for errors of

state law." ***Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003).** Therefore, Issues 8(a-h), as stand-alone claims, should be dismissed with prejudice.

Some of the arguments pertain to only the first post-conviction petition, while other issues pertain only to the second petition, and still others broadly apply to both rounds of state post-conviction proceedings and the initial federal proceedings. In any event, petitioner alleged ineffective assistance of post-conviction counsel in her November 9, 2004, pro se petition to the Illinois Supreme Court for leave to appeal the denial of her second post-conviction petition. **(Doc. 49-7, pp. 3-4).** Petitioner made the same allegation in her amended petition. **(Doc. 49-8, pp. 9-10).** In her petition to the Illinois Supreme Court and now, petitioner appears to be making an argument for equitably tolling the statute of limitations, cobbling together Issues 5-8 by arguing that attorney Christenson's ineffective assistance caused her cascading defaults, leading backward to his failure to raise trial and appellate counsel's ineffectiveness in the first and second state post-conviction petitions.

Equitable tolling requires extraordinary circumstances beyond petitioner's control. ***See Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996).** A lawyer's mistake is normally not a valid basis for equitable tolling of the one-year statute of limitations prescribed by Section 2244(d). ***Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) (citing *Davis v. Johnson*, 58 F.3d 806, 810-812 (5th Cir. 1998)).** There is no constitutional right to counsel when collaterally attacking one's conviction. ***Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).** Section 2254(i) clearly states: "The effectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." **28 U.S.C. § 2254.** Accordingly, the Supreme Court has emphasized that "the petitioner bears the

risk in federal habeas for all attorney errors made in the course of the representation," because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." ***Coleman v. Thompson,* 501 U.S. 722, 753-754 (1991).** Therefore, equitable tolling should not be permitted in this situation to allow petitioner to belatedly present issues otherwise barred by the statute of limitations.

### Issue 9

Issue 9 contends that the State failed to disclose that jailers had given petitioner psychotropic medication without her knowledge or consent, which created a doubt as to her fitness to stand trial. Petitioner asserts that it was not until after trial, when she arrived at Dwight Correctional Center, that she learned she had been given psychotropic drugs during trial, although she acknowledges having been on suicide watch. **(Doc. 45-5, pp. 1-3).** Petitioner states that in 1992 she asked that this issue be raised on appeal, to no avail. **(Doc. 45-5, p. 3).** Therefore, this issue clearly could have been raised in the initial federal habeas petition, but it was not. Therefore, the statute of limitations bars consideration of Issue 9 and it should be dismissed with prejudice.

### Issue 10

Issue 10 rehashes the aforementioned argument about psychotropic drugs and further contends that the State failed to disclose other important evidence: the location of the victim's head, and the State's failure to investigate other suspects. The thrust of Issue 10 is prosecutorial misconduct, an issue that was not specifically presented in the prior federal petition, so there is no common core of facts exists that would allow "relation back." This trial issue clearly could have been raised before. Therefore, consideration of Issue 10 is barred by the statute of

limitations and the issue should be dismissed with prejudice.

**Issue 11**

Issue 11 alleges that the State suborned perjury by and through Detective Robert Burns, who testified petitioner had been seen at a similar shooting incident in April 1988 in the parking area at Crab Orchard Lake.  As in Issue 10, Issue 11 pertains to prosecutorial misconduct, an issue that was not specifically presented in the prior federal petition, so there is no common core of facts exists that would allow "relation back."  This trial issue clearly could have been raised before.  Therefore, consideration of Issue 11 is barred by the statute of limitations and the issue should be dismissed with prejudice.

**Issue 13**

Issue 13 alleges that the Illinois courts handling  petitioner Rita Nitz's first and second post-conviction petitions have sexually discriminated against her, in that Richard Nitz has been granted relief.  This claim is entirely new and in no way relates back to the prior petition. Therefore, consideration of Issue 13 is barred by the statute of limitations and the issue should be dismissed with prejudice.

**Issue 14**

Issue 14 alleges petitioner was denied due process because, under the theory of accountability, she was convicted of uncharged crimes.  Issue 3 in the original petition– "old Issue 3"–  argued that her rights under the Fifth and Fourteenth Amendments were violated, in that the factual findings were unreasonable and could not support her conviction.  Although this Court perceives that there is some similarity between the facts relevant to Issue 14 and old Issue 3, the thrust of Issue 14 is the theory of accountability itself and, more specifically, on whether it

was proven beyond a reasonable doubt that she had the intent to promote or facilitate the crime of murder. **(*Compare* Doc. 23, p. 2 and Doc. 45-8, pp. 4-16).** This Court agrees with respondent that these two issues are so distinct as to not really share the required common core of facts. Issue 14 clearly could have been raised before, but it was not and the statute of limitations now bars further consideration; accordingly, Issue 14 should be dismissed with prejudice.

## Non-Cognizable Claims

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), habeas relief may be granted if the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" "Errors of state law in and of themselves are not cognizable on habeas review. The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley,* **390 F.3d 505, 511-12 (7ᵗʰ Cir. 2004) (internal citations omitted);** *Estelle v. McGuire***, 502 U.S. 62, 67-68 (1991).** A review of the issues presented by petitioner Nitz reveals several claims asserting errors of state law; each will be addressed in turn.

### Issue 4(c)

Issue 4(c) alleges that petitioner's sentence is excessive and an abuse of discretion. Insofar as petitioner contends the trial court misapplied the state law provisions for an extended term/natural life sentence (730 ILCS 5/5-8-4(a) (formerly 38 ILCS 1005-8-1(a)(1)(b)), errors in the interpretation of state sentencing statutes, or in their application, do not present a cognizable

claim for federal habeas relief.  ***Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).**
Petitioner's intertwined arguments that the Illinois sentencing provisions violate her federal right
to due process are addressed relative to Issue 4(a-b).  Put succinctly, in accordance with
*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Dellinger v. Bowen*, 301 F.3d 758, 765-766
(7th Cir. 2002), the sentencing statute does not implicate the Fourteenth Amendment right to due
process. Therefore, Issue 4(c) should be dismissed with prejudice.

### Issue 4(d)

In Issue 4(d), petitioner Nitz contends her sentence violates the Illinois constitution
because petitioner's limited participation, potential for rehabilitation and lack of a criminal
history were not considered by the sentencing judge.   Like Issue 4(c), Issue 4(d) is premised
upon an alleged violation of state law– the Illinois constitution– and is not cognizable in a
Section 2254 petition.  Therefore, Issue 4(d) should be dismissed with prejudice.

### Issues 8(a-h)

Although Issues 8(a-h) have been deemed barred by the statute of limitations, this Court
further concludes that these issues are not cognizable under Section 2254.  Issues 8(a-h) pertain
to post-conviction counsel's alleged ineffectiveness and revolve around Illinois Supreme Court
Rule 651(c), which requires counsel to consult with the petitioner to ascertain contentions of
constitutional violations and to review the record and ensure all of petitioner's contentions have
been adequately presented.  Any violation of the Illinois Supreme Court Rule is obviously not
cognizable, and there is no constitutional right to counsel when collaterally attacking one's
conviction.  ***Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).**  Therefore, Issues 8(a-h) should
be dismissed with prejudice.

**Issues 12(a-c)**

Issues 12(a-c) allege procedural errors in the docketing and resolution of the first post-conviction petition.  Insofar as petitioner contends state procedural rules were violated, there are no cognizable claims.  A violation of state procedural rules that is not also an unconstitutional denial of due process of law is not grounds for relief.  *Estelle v. McGuire,* **502 U.S. 62, 67 (1991);** *Neumann v. Jordan,* **84 F.3d 985, 987 (7ᵗʰ Cir.1996).**  Although petitioner generally labels the dismissal of her firs post-conviction petition as a violation of due process, she cites no authority in support of her argument.  The Illinois Post-Conviction Hearing Act, including its time limits, has long been deemed constitutional.  *United States ex rel. Dopkowski v. Randolph,* **262 F.2d 10, 12 (7ᵗʰ Cir.1958),** *cert. denied,* **359 U.S. 1004 (1959);** *see also Brown v. Allen,* **344 U.S. 443, 486 (1953) (a state may impose reasonable time limits for raising federal constitutional claims).**  States have no obligation to provide for post-conviction relief of any form.  **S**ee *Pennsylvania v. Finley,* **481 U.S. 551, 557 (1987).**  Therefore, Issues 12(a-c) should be dismissed with prejudice, as they are not cognizable under Section 2254.

### Procedural Prerequisites

With respect to those issues that are cognizable under Section 2254 and which are not barred by the statute of limitations, other procedural prerequisites must be satisfied.  A petitioner "is generally required to exhaust all of his available state court remedies before seeking a writ of habeas corpus in federal court." *Lieberman v. Thomas,* **505 F.3d 665, 669 (7ᵗʰ Cir. 2007) (***citing* **28 U.S.C. § 2254(b)(1)(A);** *Picard v. Connor,* **404 U.S. 270, 275 (1971)).**  This exhaustion doctrine promotes federal-state comity by giving states the first opportunity to address and

correct alleged violations of a petitioner's federal rights.  *Id.* (*citing Picard,* **404 U.S. at 275).**

For this reason, a habeas petitioner must present the federal nature of his claim through one full

round of review in the state court system, before  the same claim may be presented to the federal

court.  *Malone v. Walls*, **536 F.3d 744, 753 (7ᵗʰ Cir. 2008).**  If the petitioner has failed to do so

and the opportunity to raise that claim in state court has lapsed, the petitioner has procedurally

defaulted the claim, thereby precluding the federal court from reviewing the merits of that claim.

*Lieberman*, **505 F.3d at 669.**

For a constitutional claim to be fairly presented to a state court, both the operative facts

and the "controlling legal principles" must be submitted.  *Picard v. Connor*, **404 U.S. 270, 277**

**(1971).**  "At bottom, the task of the habeas court in adjudicating any issue of fair presentment is

assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the

federal constitutional nature of the issue to permit it to resolve that issue on a federal basis."

*Verdin v. O'Leary*, **972 F.2d 1467, 1476 (7ᵗʰ Cir. 1992).**

There is a second way a claim may be procedurally defaulted– "[i]n general, federal

courts 'will not review a question of federal law decided by a state court if the decision of that

court rests on a state law ground that is independent of the federal question and adequate to

support the judgment.'" *Aliwoli v. Gilmore*, **127 F.3d 632, 635  (7ᵗʰ Cir. 1997) (***citing Coleman*

*v. Thompson*, **501 U.S. 722, 729 (1991)).**   In the habeas context, this doctrine applies to bar

consideration of any of a petitioner's federal claims which a state court declined to address

because the petitioner failed to meet a state procedural requirement.  *See Braun v. Powell*, **227**

**F.3d 908, 912 (7ᵗʰ Cir. 2000).**  To be an adequate ground of decision, the state's procedural rule

must be both "firmly established and regularly followed." *Ford v. Georgia*, **498 U.S. 411,**

**423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984); *see also Braun v. Powell*, 227 F.3d 908, 912 (7ᵗʰ Cir. 2000).** In order for this doctrine to apply, the last state court rendering judgment must rest its judgment on procedural default and make a plain statement that it was relying either alone, or in the alternative, on the state procedural bar. ***Harris v. Reed*, 489 U.S. 255, 265 (1989).** However, no procedural default occurs if the state court's alternative finding constitutes a finding on the merits. ***Robertson v. Hanks*, 140 F.3d 707, 709 (7ᵗʰ Cir. 1998).**

Although no procedural default occurs if the state court's alternative finding constitutes a finding on the merits (*Robertson v. Hanks*, 140 F.3d 707, 709 (7ᵗʰ Cir. 1998)), the fact that a state court addresses the merits of a petitioner's federal claim in an alternative holding does not automatically eliminate the procedural bar. ***See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Jenkins v. Nelson*, 157 F.3d 485, 491 (7ᵗʰ Cir.1998) ("in order to foreclose review on habeas, the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the alternative").**

The exhaustion doctrine is subject to equitable exceptions, though. ***Perruquet v. Briley*, 390 F.3d 505, 514 (7ᵗʰ Cir. 2004).** A petitioner who has procedurally defaulted a claim still may obtain federal habeas relief *if* petitioner shows "cause and prejudice for the default" [7] or "that a

---

[7]"Cause" is established by showing that an external obstacle prevented the petitioner from presenting his claim to the state courts. ***See Lewis v. Sternes,* 390 F.3d 1019, 1026 (7ᵗʰ Cir. 2004).** *Accord Murray v. Carrier,* **477 U.S. 478, 488 (1986)(to establish cause for default, petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court).** To show prejudice, the petitioner must prove that

failure to grant [petitioner] relief would work a fundamental miscarriage of justice." ***Bintz v. Bertrand,*** **403 F.3d 859, 863 (7th Cir. 2005).** A fundamental miscarriage of justice occurs when "a constitutional violation "probably resulted in the conviction of one who is actually innocent." ***Id.***

Respondent contends that Issues 5(f-i), 6, 7(a-c), 8(a-h), 9, 10, 11, 12(a), 13 and 14 have been procedurally defaulted because those issues have not been presented to every level of the Illinois courts. In addition, respondent asserts that Issues 4(a) and 5(f, g and i) were dismissed on independent and adequate state law grounds and can no longer be presented in Illinois state court system **(*see* 725 ILCS 5/1221(f))**, so they are also procedurally defaulted.

### Issue 3(b)

Issue 3(b) alleges that the following statement by the trial judge constitutes an unconstitutional degree of prejudice: "Now the proof is evident. I sat through a 17 day trial of the co-defendant. The proof is evident." Respondent does not specifically address this issue. However, a review of the record reveals that the issue and other illustrations of prejudice mentioned by petitioner were never presented in the state court system, so they have been procedurally defaulted.

### Issue 4(a)

A review of the record reveals that Issue 4(a), regarding *Apprendi*, was presented, but dismissed as untimely, pursuant to 725 ILCS 5/122-1. **(Doc. 20, Exhibit s A, B, G, H and I).** Therefore, Issue 4(a) has been procedurally defaulted, in that it was dismissed within the state

---

state court errors worked to his "actual and substantial disadvantage." ***U.S. v. Frady,*** **456 U.S. 152, 170 (1982).**

court system based on an independent and adequate state law ground.

### Issues 5(f, g and i)

Issues 5(f, g and i), pertain to trial counsel's alleged ineffectiveness for not pursuing grounds for reversal based on: (1) petitioner being medicated and not being fit for trial; (2) the trial judge allegedly socializing with a juror; and (3)failing to investigate other suspects.  These issues were presented in the first post-conviction petition, but they were dismissed as untimely, pursuant to 725 ILCS 5/122-1.  **(Doc. 20, Exhibit s A, B, G, H and I).**  Therefore, Issues 5(f, g and i) have been procedurally defaulted, in that they were dismissed within the state court system based on an independent and adequate state law ground.

### Issue 5(h)

Issue 5(h), regarding trial counsel's alleged ineffectiveness for not addressing the accountability theory in closing argument, was not presented through one full round in the state court system– not on direct appeal, or in either collateral attack.  **(Doc. 20, Exhibits A, B,G and H; Doc. 49-3).**  Therefore, Issue 5(h) has been procedurally defaulted.

### Issue 6

Issue 6, regarding trial counsel's allegedly being unfit to try petitioner's case, was not presented for a full round of review in the state court system– not on direct appeal, or in either collateral attack.  **(Doc. 20, Exhibits A, B,G and H; Doc. 49-3).**  Therefore, Issue 6 has been procedurally defaulted.

### Issues 7(a-c)

Issues 7(a-c) regarding the alleged ineffectiveness of appellate counsel were not presented for a full round of review in the state court system, despite petitioner filing two collateral attacks after her direct appeal. **(Doc. 20, Exhibits G and H; Doc. 49-3).** Therefore, Issues 7(a-c) have been procedurally defaulted.

### Issues 8(a-h)

Issues 8(a-h) pertains to the alleged ineffectiveness of post-conviction counsel, who represented petitioner through her first collateral attack, and then through the appeal of the second petition. Theses issues were presented in a pro se motion for leave to appeal to the Illinois Supreme Court, which was arguably the first opportunity petitioner had to present the issue. **(Doc. 49-7).** Nevertheless, that argument was premised upon a violation of Illinois Supreme Court Rule 651(c), and was not based on the specific factual issues raised now. The Illinois Supreme Court denied leave to appeal. **(Doc. 49-9).** Even if the issues were fairly presented to the Illinois Supreme Court, raising an issue for the first time in such a discretionary appeal is insufficient. ***See Wilson v. Briley***, 243 F.3d 325, 328 (7th Cir. 2001). Therefore, Issues 8(a-h) cannot be said to have been fairly presented in the state court system; therefore, they have been procedurally defaulted.

### Issue 9

Issue 9 pertains to the State's failure to disclose that petitioner was given psychotropic drugs, which allegedly rendered her unfit for trial. This issue was generally presented in her first post-conviction petition. **(Doc. 20, Exhibits G and H).** The first post-conviction petition was dismissed as untimely, pursuant to 725 ILCS 5/122-1. **(Doc. 20, Exhibit I).** Therefore, Issue 9 has been procedurally defaulted, in that it was dismissed within the state court system based on

an independent and adequate state law ground.

### Issue 10

Issue 10 pertains to the State's alleged failure to disclose important evidence:  the location of the victim's head, the State's failure to investigate other suspects, and the administration of psychotropic drugs to petitioner.  A very generous reading of the first post-conviction petition reveals that these issues were generally presented.  **(Doc. 20, Exhibit G).** Nevertheless, the petition was dismissed as untimely, pursuant to 725 ILCS 5/122-1.  **(Doc. 20, Exhibit I).**  Therefore, Issue 10 has been procedurally defaulted, in that it was dismissed within the state court system based on an independent and adequate state law ground.  The matters raised in Issue 10 were not a part of the second post-conviction petition.  **(Doc. 49-3).**

### Issue 11

Issue 11, regarding the State allegedly suborning perjury by Detective Burns, has never been presented for a full round of review within the Illinois court system– not on direct appeal, in either round of post-conviction proceedings.  **(Doc. 20, Exhibits A, B, G and H; Doc. 49-3; and Doc. 49-7).**  Therefore, Issue 11 has been procedurally defaulted.

### Issue 12(a)

Issue 12(a) takes issue with the Illinois Supreme Court's failure to properly docket the first post-conviction petition, as required by Illinois law.  This issue was not presented in the second post-conviction petition, so it has been procedurally defaulted.  **(Doc. 49-3).**

### Issue 13

27

Issue 13 alleges that the Illinois Courts have sexually discriminated against her. This issue has not been presented for a full round of review within the state court system; therefore, it has been procedurally defaulted. **(Doc. 20, Exhibits A, B, G and H; Doc. 49-3; and Doc. 49-7).**

### Issue 14

Issue 14 alleges that petitioner was denied due process because, under the accountability theory, she was convicted of an uncharged crime. The argument that the accountability is a separate crime that was not charged has never been presented for a full round of review within the state court system and therefore has been procedurally defaulted. **(Doc. 20, Exhibits A, B, G and H; Doc. 49-3; and Doc. 49-7).**

### Excusable Procedural Default

A petitioner can circumvent this bar to review if she is able to demonstrate cause for her procedural error and establish prejudice resulting from that error. ***Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999); and *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).** Absent a specific showing of cause and prejudice, "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" ***Coleman*, 501 U.S. at 748.** This exception requires a colorable claim of actual innocence, as well as an allegation of a constitutional wrong. ***See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence).** Petitioner has not specifically argued that her procedural default should be excused. However, this Court offers the following analysis for the District Court's benefit.

As a general matter, cause for procedural default exists where "some objective factor external to the defense impeded [defendant's] efforts to comply with the State's procedural rule."

28

***Guest v. McCann,*** **474 F.3d 926, 930 (7ᵗʰ Cir. 2007) (quoting *McCleskey v. Zant,* 499 U.S.**

**467, 493 (1991)).** Cause may be premised upon "a showing that the factual or legal basis for a

claim was not reasonably available" at the time the first post-conviction petition was filed. ***Id.***

However, "a petitioner's 'failure to act or think like a lawyer cannot be cause for failing to assert

a claim.' " ***Barksdale v. Lane,*** **957 F.2d 379, 385 (7ᵗʰ Cir. 1992) (quoting *Henderson v. Cohn,***

**919 F.2d 1270, 1272 (7ᵗʰ Cir. 1990)).** As previously discussed, petitioner has failed to present

the usual backward-cascading chain of ineffective assistance of counsel that would enable the

federal court to reach the procedurally defaulted issues. As discussed relative to the

cognizability of Issues 12(a-c), regarding the ineffectiveness of post-conviction counsel,

petitioner has only presented arguments premised upon state law.

Petitioner does assert that she is actually innocent of the murder. **(Doc. 45-2, p. 1).** That

assertion is presumably based on her other arguments which, if correct, would mean she is

factually and legally innocent. In the default context, actual innocence is "not itself a

constitutional claim, but instead a gateway through which a habeas petitioner must pass to have

his otherwise barred constitutional claim considered on the merits." ***Schlup v. Delo,*** **513 U.S.**

**298, 315 (1995) (internal quotation marks omitted).** To support a claim of actual innocence, a

habeas petitioner must present "new reliable evidence . . . that was not presented at trial" and

must establish that "it was more likely than not that no reasonable juror would have convicted

him in light of the new evidence." ***Gomez v. Jaimet,*** **350 F.3d 673, 679 (7ᵗʰ Cir. 2003); *see also***

***Schlup***, **513 U.S. at 327-328.**

> To be credible, such a claim requires petitioner to support his allegations of
> constitutional error with new reliable evidence-whether it be exculpatory
> scientific evidence, trustworthy eyewitness accounts, or critical physical
> evidence-that was not presented at trial. Because such evidence is obviously

unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

**Schlup, 513 U.S. at 324.**

On direct appeal, the appellate court found sufficient evidence to support petitioner's conviction for murder, as charged *and* under the theory of accountability. **(Doc. 20, Exhibit D (*People v. Nitz*, 610 N.E.2d 1289, 1292-1299 (Ill.App. 5th Dist. 1993)).** The charge and theory of accountability were addressed, and the evidence was set forth and discussed in detail. The appellate court concluded that regardless of whether the victim was shot, there was scientific evidence that the victim was alive when he was placed in the car, and that there was evidence that petitioner helped her husband place the victim in the car, and that petitioner drove the car away or was in the car when it left, only to have the victim later discovered dead. The petition before the Court presents arguments about what a better investigation *might* turn up, but no *new* evidence; therefore, petitioner's assertion of her actual innocence fails. Consequently, the procedural default of Issues 3(b), 4(a), 5(f-i), 6, 7(a-c), 8(a-h), 9, 10, 11, 12(a), 13 and 14 cannot be excused.

### The Merits of the Remaining Claims

At this juncture, only Issues 1, 2, 3(a), 4(b) and 5(a-e) remain for consideration.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is only entitled to habeas relief when the decision of the last state court to consider the case is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. **28 U.S.C. § 2254(d)(1).** A decision is contrary to clearly established federal law if the state court applies a rule that conflicts with a rule

identified by the Supreme Court, or if the state court reaches a different conclusion than the Supreme Court in a case with materially indistinguishable facts. **Williams v. Taylor, 529 U.S. 362, 405-406 (2000).** A decision involves an unreasonable application of clearly established law if the state court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the [petitioner's] case." **Id. at 413.** Under both tests, mere error is not sufficient; a state court's decision must be "objectively unreasonable." **Lockyer v. Andrade, 538 U.S. 63, 76 (2003).**

Respondent argues that the remaining claims were decided by the state appellate court, and that the appellate court did not apply controlling Supreme Court precedents in an objectively unreasonable manner; thus, habeas relief is not warranted.

<u>**Issue 1**</u>

In Issue 1, petitioner Nitz argues that the State failed to prove she was guilty beyond reasonable doubt of first degree murder for the "shooting death" of Michael D. Miley, as charged. **(Doc. 45-2, pp. 1-8).** More specifically, petitioner argues that there was *no* evidence that the victim was shot, which was the cause of death alleged in the indictment. Petitioner further argues that there was insufficient evidence to establish beyond a reasonable doubt that she was responsible for the acts of Richard Nitz under the accountability theory. Petitioner highlights the testimony of Betty Boyer that petitioner was merely standing by when Richard Nitz beat the victim with a bat. Although the amended petition before the Court does not indicate which specific constitutional right petitioner is relying upon, based on the arguments presented in the state court system, the Court will look to the Fifth and Fourteenth Amendments. Respondent correctly observes that the state appellate court did not cite federal cases in its

decision; nevertheless, the principles correspond with controlling federal law, as the following analysis shows.

"[A] petitioner is 'entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" ***Cabrera v. Hinsley*, 324 F.3d 527, 533 (7ᵗʰ Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).**  The state appellate court characterized the "death by shooting" aspect of the charge as nonessential, because the state had no obligation to prove the means used to commit the murder.  **(Doc. 20, Exhibit D, *People v. Rita Jo Nitz*, 610 N.E.2d 1289, 1298 (Ill.App. 5ᵗʰ Dist. 1993)).**  The appellate court further concluded that petitioner had suffered no prejudice, in that her theory of defense at trial was that she had not been present during the murder.  ***Id.***  As to whether there was sufficient evidence linking petitioner to the murder, the appellate court cited evidence that petitioner helped load the victim into the trunk of the car, petitioner herself drove off with the victim in the trunk, the victim was later found dead in the trunk and the scientific evidence that the victim was alive when he was first placed in the trunk.  ***Id.***

With respect to whether the victim was shot, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." ***Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Reed v. Clark*, 984 F.2d 209, 210 (7ᵗʰ Cir.1993).**  This Court further agrees that the aforementioned evidence is sufficient to form the basis of guilt beyond a reasonable doubt– beyond that, it is not this Court's job to re-weigh the evidence or substitute its judgment for the trier of fact.  Therefore, Issue 1, petitioner's attack on the charge and evidence fails.

**Issue 2**

Issue 2 alleges that the trial court erred in denying petitioner's motion for change of venue. **(Doc. 45-2, pp. 10-11).** Petitioner states that out of 70 potential jurors questioned, only three had not heard of the murder– likely due to the fact trial was held in a county in the same media market as where the crime was committed.

It is undisputed that due process considerations and the Sixth Amendment guarantee a defendant a fair trial. Pretrial publicity can act to deny a defendant a fair and impartial jury. *Sheppard v. Maxwell,* **384 U.S. 333 (1966);** *Irvin v. Dowd,* **366 U.S. 717 (1961);** *Marshall v. United States,* **360 U.S. 310 (1959).** The venue for petitioner's trial was initially changed, transferring trial from Williamson County to Massac County. **(Doc. 20, Exhibit D,** *People v. Rita Jo Nitz,* **610 N.E.2d 1289, 1299 (Ill.App. 5th Dist. 1993)).** In her effort to get the venue transferred again, petitioner attempted to analogize her situation to that in *People v. Taylor*, 462 N.E.2d 478 (Ill. 1984), where a constitutional violation was found due to pre-trial publicity, combined with at least half of the jurors being aware that a co-defendant had passed a polygraph test and been released due to insufficient evidence. *Taylor*, **462 N.E.2d at 485-486.** Petitioner cited evidence that print and television media in Massac County had extensively covered the murder, and only three of the 70 potential jurors had not heard of the case. **(See Doc. 20, Exhibit B, pp. 19-20; and Exhibit D,** *People v. Rita Jo Nitz,* **610 N.E.2d 1289, 1299 (Ill.App. 5th Dist. 1993)).** Petitioner also cited the trial judge's *voir dire* of the jury pool regarding their knowledge of Richard Nitz's conviction.

The appellate court recognized that the key question is not the amount of pretrial publicity, but whether petitioner received a fair trial. ***Rita Jo Nitz*, 610 N.E.2d at 1300; *see also Irvin v. Dowd*, 366 U.S. 717, 723(1961).** The appellate court found that the publicity had dissipated after Richard Nitz's trial, which was five months before petitioner's trial.

***Rita Jo Nitz*, 610 N.E.2d at 1300.** Furthermore, the appellate court ruled that since petitioner's counsel had requested that the jury pool be questioned regarding their knowledge of Richard Nitz's conviction, petitioner could not assign error to something she precipitated. *Id.*

Jurors are not required to be totally ignorant of the case. ***Irvin*, 366 U.S. at 722-723.** "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." The existence of an opinion which raises a presumption of partiality is a mixed question of law and fact. *Id.* With respect to pretrial publicity, the trial court and the appellate court found that since each juror had indicted that he or she could be impartial, and since the publicity had died down since Richard Nitz's trial, petitioner could receive a fair trial before those jurors. **Id.** This Court finds no cause for upsetting the trial court's decision based on the pretrial publicity and its decision not to grant another change of venue to a more distant county– there is no inconsistency with federal constitutional law.

### Issue 3(a)

In Issue 3(a), petitioner argues that the trial judge was prejudiced against her, in that during voir dire he inquired whether Richard Nitz's conviction would prejudice them against petitioner. **(Doc. 45-3, p. 3).**

V*oir dire* is greatly discretionary and a defendant has a right to an adequate *voir dire* to identify unqualified jurors. ***Morgan v. Illinois*, 504 U.S. 719, 729 (1992); *see also Wainwright***

***v. Witt*, 469 U.S. 412, 423 (1985) ("It is the adversary seeking exclusion who must demonstrate, *through questioning*, that the potential juror lacks impartiality.").** Since asking about knowledge of Richard Nitz's conviction could help identify prejudice, and simultaneously create prejudice, it cannot be said that the trial judge's questioning was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; therefore petitioner is not entitled to relief. **28 U.S.C. § 2254(d)(1); *Johnson v. Bett*, 349 F.3d 1030, 1034 (7ᵗʰ Cir. 2003).**

### Issue 4(b)

In Issue 4(b), petitioner contends she was erroneously sentenced because the Illinois sentencing statute, 38 ILCS 1005-8-1(a)(1)(b), is unconstitutionally vague on its face, in violation of the Fourteenth Amendment. **(Doc. 45-3, pp. 5 and 9-11).**

Petitioner's sentence was increased by the trial judge from a maximum of 60 years to natural life, pursuant to 38 ILCS 1005-8-1(a)(1)(b). That sentencing statute permits the 60 year statutory maximum sentence to be increased to natural life, "if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." The state appellate court relied upon state precedents in analyzing this issue. **(Doc. 20, Exhibit D, *People v. Rita Jo Nitz*, 610 N.E.2d 1289, 1301-1302 (Ill.App. 5ᵗʰ Dist. 1993)).** In any event, the Court of Appeals for the Seventh Circuit has already analyzed the constitutional issue and specifically held that the "brutal and heinous" sentencing enhancement in 38 ILCS 1005-8-1(a)(1)(b) is constitutional, in that it offers sufficient guidance to the courts. *Barnhill v. Flannigan*, 42 F.3d 1074, (7ᵗʰ Cir. 1994) (citing *Peebles v. Greer*, 739 F.2d 262 (7ᵗʰ Cir. 1984)).** Therefore, Issue 4(b) fails on its merits.

### Issues 5(a-e)

Issues 5(a-e) allege petitioner's trial counsel was ineffective because he: (1) failed to object to statements by the trial judge and the prosecutor that Richard Nitz had been convicted of

the same crime; (2) failed to object to evidence that Richard Nitz hated homosexuals; (3) failed to object to the introduction of a bat, knife and shovel when those items were not linked to any crime; (4) failed to impeach a witness called by the prosecution with her prior inconsistent statements; and (5) failed to argue during closing argument that the victim was dead before the defendant was involved in any way with the shooting of the victim. **(Doc. 45-4, pp. 1-3).**

A petitioner bears a "heavy burden in proving that [his or her] trial attorney rendered ineffective assistance of counsel." *U.S. v. Holland,* **992 F.2d 687, 691 (7th Cir. 1993).** For a conviction to be reversed for ineffective assistance of counsel, a two-prong test must be met: (1) the trial counsel's representation must fall below an objective standard of reasonableness, and (2) counsel's deficient performance must have prejudiced the defense. *Strickland v. Washington,* **466 U.S. 668, 687 (1984).** The first prong of the *Strickland* test requires a showing that counsel made errors so serious that counsel was not functioning as guaranteed the [petitioner] by the Sixth Amendment of the United States Constitution. *Srtickland,* **466 U.S. at 687.** The second prong of the *Strickland* test requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial. *Id.*

Federal courts do not apply the principles of *Strickland* directly to a claim of ineffective assistance that has been adjudicated by the state courts; rather, the role of the federal courts is limited to analyzing whether the state courts reasonably applied federal law in concluding that trial counsel was not constitutionally ineffective. *Conner v. McBride,* **375 F.3d 643, 657 (7th Cir. 2004).** A claim of ineffective assistance based on counsel's failure to object is "tied to the admissibility of the underlying evidence." *Hough v. Anderson,* **272 F.3d 878, 898 (7th Cir. 2001).** Questions concerning the admissibility of evidence are generally governed by state law.

*Milone v. Camp,* **22 F.3d 693, 702 (7th Cir. 1994).** If evidence admitted without objection was admissible, then a petitioner's argument fails both prongs of the *Strickland* test. ***Hough,* 272 F.3d at 898.**

On direct appeal, it was held that these alleged errors were all consistent with the defense strategy, and that there was no apparent prejudice. **(Doc. 20, Exhibit D, *People v. Rita Jo Nitz,* 610 N.E.2d 1289, 1300-1301 (Ill.App. 5th Dist. 1993)).** Petitioner has not specifically detailed how the *Strickland* test was improperly applied by the state appellate court. Therefore, pursuant to 28 U.S.C. § 2254(d)(1) and *Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003), habeas relief cannot be granted. For the benefit of the District Court, this Court offers the following brief analysis of petitioner's five points of error.

Petitioner's argument faulting defense counsel's failure to object to statements by the trial judge and the prosecutor reflecting that Richard Nitz had been found guilty, is not well taken for reasons set forth relative to Issue 3(a). Defense counsel introduced the topic of Richard Nitz's conviction during voir dire for petitioner's benefit; therefore, the judge's statement and the prosecutor's subsequent reference to Richard Nitz's conviction, made during opening statements, cannot be viewed as prejudicial.[8] **(*See* Doc. 20, Exhibit D, *People v. Rita Jo Nitz,* 610 N.E.2d 1289, 1300-1301 (Ill.App. 5th Dist. 1993)).** The fact that the precise cause of death was never determined, combined with evidence that Richard and Rita both took action that could have caused the victim's death, legally and factually necessitated the prosecutor's comment that Rita should be held just as responsible as Richard Nitz had been held. **(*See* Doc. 20, Exhibit B, p.**

---

[8]Petitioner's assertion that she did not authorize her attorney to interject that inquiry into the proceedings is new and therefore not properly considered.

**30).**  Moreover, the prejudice to petitioner is not apparent, given that petitioner's defense at trial was that she had absolutely nothing to do with the victim's death or the transportation of the body– she was nowhere around.  **(*See* Doc. 20, Exhibit D, *People v. Rita Jo Nitz*, 610 N.E.2d 1289, 1293-1297 (Ill.App. 5th Dist. 1993)).**

Similarly, defense counsel's four other enumerated failures are reasonable tactical decisions, in light of the theory of defense and petitioner's testimony at trial.  Reasonable, informed strategic decisions are virtually unchallengeable under *Strickland*.  **U.S. ex rel. Hampton v. Leibach, 347 F.3d 219, 247 (7th Cir. 2003).**  Furthermore, as respondent notes, Richard Nitz's hatred of homosexuals is relevant to motive; and the bat, knife and shovel are relevant to the possible means by which the murder was committed and covered-up.  With respect to counsel's cross-examination of Betty Boyer, the appellate court noted that counsel had cross-examined Boyer.  What petitioner is really battling is that the jury apparently did not find the inconsistencies raised by counsel to be persuasive, which hardly amounts to ineffective assistance of counsel.  Lastly, as the appellate court concluded, counsel's failure to argue that the victim was dead before petitioner's involvement with the body began is entirely consistent with the trial strategy that petitioner was not present at the murder.  It was not unreasonable for counsel to elect not to offer an alternate defense that would have contradicted petitioner's testimony and primary defense strategy.   Therefore, all five of petitioner's ineffective assistance arguments fail.

**<u>Recommendation</u>**

For the aforestated reasons, it is this Court's recommendation that petitioner Rita Jo Nitz's

amended petition for relief pursuant to 28 U.S.C. § 2254 **(Doc. 45)** be denied in all respects.

For the convenience of the Court, this summary reflects the recommendations (set forth in

bold) relative to each enumerated issue:

1. The State failed to prove that petitioner was guilty beyond reasonable doubt of first degree murder for the "shooting death" of Michael D. Miley, as charged;

   **Dismissed on the merits.**

2. The trial court erred in denying petitioner's motion for change of venue;

   **Dismissed on the merits.**

3. The trial judge was prejudiced against petitioner, as demonstrated by:

   a. the judge inquiring of jurors during voir dire whether Richard Nitz's conviction would prejudice them; and

      **Dismissed on the merits.**

   b. the judge receiving defense counsel's arguments and objections in a hostile manner and making comments, such as "the proof is evident;"

      **Dismissed with prejudice due to procedural default.**

4. Petitioner was erroneously sentenced in that:

   a. the "natural life" sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which should be retroactively applied;

      **Dismissed with prejudice due to procedural default.**

   b. the Illinois sentencing statute, 38 ILCS 1005-8-1(a)(1)(b), is unconstitutionally vague on its face;

      **Dismissed on the merits.**

   c. the sentence itself is excessive and an abuse of discretion; and

      **Dismissed with prejudice because no cognizable claim was presented.**

   d. the sentence violates the Illinois constitution because petitioner's limited participation, potential for rehabilitation and lack of a criminal history were not considered;

      **Dismissed with prejudice because no cognizable claim was presented.**

39

5.    Petitioner was denied effective assistance of counsel at trial because her attorney:

   a.    failed to object to statements by the trial judge and the prosecutor that Richard Nitz had been convicted of the same crime;

   **Dismissed on the merits.**

   b.    failed to object to evidence that Richard Nitz hated homosexuals;

   **Dismissed on the merits.**

   c.    failed to object to the introduction of a bat, knife and shovel when those items were not linked to any crime;

   **Dismissed on the merits.**

   d.    failed to impeach a witness called by the prosecution with her prior inconsistent statements;

   **Dismissed on the merits.**

   e.    failed to argue during closing argument that the victim was dead before the defendant was involved in any way with the victim;

   **Dismissed on the merits.**

   f.    failed to advise the trial court that petitioner Rita Nitz was on medication and might be unfit to stand trial;

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

   g.    failed to request a mistrial after the trial judge "socialized" with a juror;

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

   h.    failed to address the State's theory of accountability in closing argument; and

   **Dismissed with prejudice due to procedural default.**

   i.    failed to investigate other possible suspects;

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

6.    Trial counsel was generally unfit to represent petitioner Rita Nitz;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

7.    Appellate counsel was ineffective by:

   a.    failing to argue that petitioner Rita Nitz was on medication during trial and

should have been given a fitness hearing;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

b.    failing to investigate the State's failure to disclose exculpatory evidence; and

**Dismissed with prejudice due to the statute of limitations and procedural default.**

c.    failing to argue that the State suborned perjury from the State's witness Detective Robert Burns;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

8.    Post-conviction counsel was ineffective by:

a.    failing to communicate with petitioner, as required by State procedureal rules;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

b.    lying to this Court about the filing dates of the second post-conviction petition;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

c.    failing to read the record and raise additional trial issues;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

d.    failing to raise procedural issues on appeal from the dismissal of post-conviction petition;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

e.    waiving claims on appeal from the dismissal of the first post-conviction petition;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

f.    failing to file a timely second post-conviction petition;

**Dismissed with prejudice due to the statute of limitations and procedural default.**

g.    failing to file a required certificate under Illinois Supreme Court Rule 651(c); and

**Dismissed with prejudice due to the statute of limitations and**

**procedural default.**

h.   failing to raise issues of sex discrimination and equal protection violations;

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

9.   The State failed to disclose that jailers had given petitioner psychotropic medication without her knowledge or consent, which created a doubt as to her fitness to stand trial;

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

10.   The State failed to disclose important evidence:  the location of the victim's head, the State's failure to investigate other suspects, and the administration of psychotropic drugs to petitioner;

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

11.   The State suborned perjury through the testimony of Detective Robert Burns;

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

12.   The State Court handling the first post-conviction petition erred when it:

a.   failed to docket the first petition within the 90-day time limit prescribed by 725 ILCS 5/122-2.1(a) and (2)(b);

   **Dismissed with prejudice due to procedural default, and because no cognizable claim was presented.**

b.   dismissed the first petition as untimely, without an evidentiary hearing; and

   **Dismissed with prejudice because no cognizable claim was presented.**

c.   did not grant an evidentiary hearing as required by 725 ILCS 5/122-1 and 122-2.1(b);

   **Dismissed with prejudice because no cognizable claim was presented.**

13.   The Illinois Courts handling  petitioner Rita Nitz's first and second post-conviction petitions have sexually discriminated against her, in that Richard Nitz has been granted relief; and

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

14.   Petitioner was denied due process because, under the theory of accountability, she was convicted of uncharged crimes.

   **Dismissed with prejudice due to the statute of limitations and procedural default.**

**Submitted: December 19, 2008**

S/ Clifford J. Proud

**CLIFFORD J. PROUD**

**U. S. MAGISTRATE JUDGE**

### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **January 12, 2009**. No extensions of this deadline will be granted.